### 21984. WASHINGTON v. THE STATE.
### 21985. BAKER v. THE STATE.

SUBMITTED MARCH 11, 1963—DECIDED APRIL 4, 1963.

*Edward J. Goodwin,* for plaintiffs in error.

*Andrew J. Ryan, Jr.,* Solicitor General, *Eugene Cook,* Attorney General, *Rubye G. Jackson,* Assistant Attorney General, contra.

GRICE, Justice. Two persons convicted of murder assign error upon denial of their amended motions for new trial.

Richard Washington and Gerald Baker, along with Leonard Hubbard, were jointly indicted by the grand jury of Chatham County, Georgia, for the murder of Arthur S. Givens. Washington and Baker were tried together. Following their conviction and sentence to life imprisonment, they filed separate motions for new trial upon the general grounds. These motions were amended identically to include three special grounds.

Since the evidence upon the joint trial of the two defendants was the same in material respects and since their motions for new trial are identical, the two cases here for review will be treated together.

A consideration of the evidence, in the light of the general and special grounds urging its insufficiency, shows that it amply authorized the verdict of guilty of murder as to both Washington and Baker. The evidence offered by the State showed that these two defendants and Hubbard conspired to rob the deceased and in the attempted robbery Hubbard fired the pistol shots which produced Givens' death.

Two witnesses testified that approximately two days before the shooting occurred they saw Washington, Baker and Hubbard, that they talked about robbing Givens, that Hubbard asked the witnesses if they wanted to help, but that they declined.

Hubbard made an extra-judicial written statement in the presence of Washington and Baker, and it was read into evidence. In it Hubbard stated, among other matters, that another person first suggested the robbery and Hubbard then mentioned it to Washington and Baker; that the person who suggested the robbery gave Hubbard a pistol and told Hubbard, Washington and Baker that "if we get any money to be sure to come to his house and not to go home"; that Hubbard, Washington and Baker later went to a point just across from Givens' house and hid behind a parked automobile; that Hubbard tried to give the gun first to Baker, then to Washington, but each refused it; that when Givens arrived at his house, Hubbard ran over to him with gun in hand and handkerchief over face and demanded that Givens give him his money; that Givens refused and pulled

a gun, knocking Hubbard's hand and causing Hubbard's gun to go off accidentally; that Hubbard then ran and caught up with Washington and Baker, who had run at the time the encounter with Givens began; that Hubbard told them what had happened and they agreed to go home; and that the next day Hubbard and Washington returned the gun to its owner, who stated that he would get rid of it. Both Washington and Baker acknowledged in writing the truth of this statement made by Hubbard.

Upon the trial, Washington and Baker denied any part in planning to rob Givens or in the commission of the crime.

The issues thus made were for the jury to determine.

What was said in *Ingram v. State*, 204 Ga. 164, 183 (48 SE2d 891), also applies here: "Whether or not the defendants acted with a common intent and purpose in a concerted action to make the attack upon the deceased, was a question for determination by the jury, and there was sufficient proof offered to authorize the jury to find such to be a fact. A conspiracy may be proved by conduct as well as by an express agreement; and it is unnecessary that any antecedent agreement or understanding between the alleged conspirators be shown. If the evidence shows, and in this case it was sufficient to do so, that the defendants acted with a common intent and purpose in the attack on the deceased, and that the things which were proved to have happened were within the scope of this common intent and purpose, this amounts to a conspiracy. Such being true, the act of one within the scope of the conspiracy and during its progress was the act of all. [Citations.]"

The evidence in the instant case was sufficient for the jury to find that there was a conspiracy among the defendants and Hubbard to rob Givens and that the shooting of Givens occurred during the attempted robbery pursuant to that conspiracy. Therefore, the three general grounds and special ground 5 of the amended motion for new trial, which complained that the verdict was not supported by evidence, were properly denied.

■ Special ground 4 urges that the court erred in denying defendants' motions for directed verdicts of not guilty based upon insufficiency of the evidence. Refusal to direct a verdict is never ground for a new trial.

Examining now special ground 6 of each motion, urging that the principle of involuntary manslaughter and the form of verdict therefor should have been charged, we conclude that under the evidence this crime was not involved and the trial court's failure to charge it was not erroneous.

As held in Division 1, the evidence authorized the jury to find that the shooting occurred during an attempt to rob Givens and that such attempt was pursuant to a conspiracy among the defendants and Hubbard. Even if, as contended by Hubbard in his written statement, Givens pulled a gun, knocking Hubbard's hand and accidentally causing his gun to fire, this was not involuntary manslaughter. It was murder, because Hubbard was then holding his gun in an attempt to rob Givens and thereby created the necessity for Givens to try to defend himself. See *Daniel v. State,* 187 Ga. 411 (1 SE2d 6); *Lynch v. State,* 207 Ga. 325 (1) (61 SE2d 495).

Accordingly, none of the grounds of the two amended motions for new trial was meritorious, and their denial was not error.

*Judgment affirmed. All the Justices concur.*