22418.  JACKSON v. THE STATE.

Submitted March 10, 1964—Decided April 13, 1964.

*LeRoy S. Briean,* for plaintiff in error.

*William T. Boyd, Solicitor General, J. Walter LeCraw, William E. Spence, Eugene Cook, Attorney General, Rubye G. Jackson, Assistant Attorney General,* contra.

Mobley, Justice.  1.  The general grounds and the first special ground, which alleges that the testimony of an accomplice of the defendant was not corroborated, will be considered together, as this ground is only an elaboration of the general grounds.  The testimony of the accomplice was corroborated, and the evidence was fully ample to support the verdict.

Pace, a co-indictee, testified that he, Stone, and Jackson conspired to rob the deceased, and that Pace and Stone went to the store to effect the robbery, while Jackson remained in the car, which they parked across the railroad tracks directly in front of and about 75 feet from the store.  Pace testified that Jackson first mentioned going out on Gordon Road and robbing a store, that they went out to a named store, Jackson went in, came back and said, "it didn't seem like it was too much money in there," so then Jackson drove to Mr. Little's store, where Jackson went in and came back saying, "it looked like it should be a right smart of money in there"; that then Jackson drove the car across the railroad tracks and parked, and Jackson and Stone went to the store saying they were going to rob it, but came back saying there were other people in the store, so they waited about 15 minutes in the car and then Pace and Stone went to the Little store and left Jackson sitting in the car; that when they entered

the store Pace drew a pistol on Little and engaged in a tussle with him during which the pistol which he held in his hand fell to the floor; that suddenly Little released his hold on him and sank to the floor; that Stone took the money from the cash register and they returned to the car, where Jackson was waiting; that they then drove to the house of a friend of Jackson's, where Pace changed clothes and washed the blood from his hands.   Little died from the gunshot wound.

The testimony of Pace was corroborated by two girls, who in going from their home to Little's store saw the parked automobile, which fitted the description of Pace's car, parked across the railroad tracks in front of the Little store and saw one man sitting in it, with two men coming from the direction of Little's store, one of whom was identified as Jackson by one of the girls; and as they came back from the store, they saw the three men sitting in the car.   This supported the testimony of Pace that Jackson and Stone first went to the store leaving him sitting in the car, came back when they found several people there, then the three sat in the car for a few minutes before he and Stone, leaving Jackson in the car, went over and robbed the store. Several witnesses testified as to seeing Jackson and two other men at the house where Pace said they went after the robbery. The bloody clothes were found where Pace said they were put. An employee of Little, who was in the store when he was killed, identified Stone and Pace as the ones who came into the store. There was other evidence corroborating Pace's testimony.   See *Whaley v. State,* 177 Ga. 757 (2, 3) (171 SE 290), as to sufficiency of evidence to corroborate testimony of an accomplice. Jackson, who was 37 years old, was, according to Pace, the leader and planner of the robbery, with Pace who was 29, and Stone, 20, active participants therein.

2.   Special grounds 2, 3, and 4 which except to the admission of testimony without setting out or pointing out in the record what testimony was improperly admitted are insufficient to constitute an assignment of error.

3.   Ground 5 which complains of the court's refusal to direct a verdict of not guilty is without merit.   "It is not error in a criminal case to refuse to direct a verdict of not guilty."   *Cornett v. State,* 218 Ga. 405 (3) (128 SE2d 317), and cases cited.

4. There is no merit in ground 6 which complains of the refusal of the court to declare a mistrial on motion of defendant's counsel because the solicitor general in his argument to the jury said, "that from his deductions, movant was a murderer." The evidence authorized that deduction and thus the argument was permissible. *Montos v. State*, 212 Ga. 764 (7) (95 SE2d 792).

5. Special grounds 7 and 8 allege as error the refusal to grant a mistrial on motion of the defendant's counsel because the solicitor general read certain excerpts from decisions of this court to the court in the presence and hearing of the jury.

(a) In ground 7 the excerpt was the following quotation from *Eberhart v. State*, 47 Ga. 598. "We have, however, no sympathy with that sickly sentimentality that springs into action whenever a criminal is at length about to suffer for crime. It may be a sign of a tender heart, but it is also a sign of one not under proper regulation. Society demands that crime shall be punished and criminals warned, and the false humanity that starts and shudders when the axe of justice is ready to strike, is a dangerous element for the peace of society. We have had too much of this mercy. It is not true mercy. It only looks to the criminal, but we must insist upon mercy to society, upon justice to the poor woman whose blood cries out against her murderers. That criminals go unpunished is a disgrace to our civilization, and we have reaped the fruits of it in the frequency in which bloody deeds occur. A stern, unbending, unflinching administration of the penal laws, without regard to position or sex, as it is the highest mark of civilization, is also the surest mode to prevent the commission of offenses."

This court in *Nix v. State*, 149 Ga. 304 (2) (100 SE 197), in a 4-2 decision held that it was not error to read the quoted excerpt, less the first sentence, to the court in the hearing of the jury. In *Beam v. State*, 208 Ga. 497 (2) (67 SE2d 573), this court in a unanimous opinion held that it was not error to read the excerpt read in *Nix v. State,* supra. We do not believe the fact that the sentence, "We have, however, no sympathy with that sickly sentimentality that springs into action whenever a criminal is at length about to suffer for crime," given in the case under consideration, but not given in *Beam v. State,* supra,

would be a material difference in the two excerpts such as to relieve this court of the binding effect of the unanimous decision in *Beam v. State*. That sentence is no more objectionable than that which this court has approved. Special ground 7 is without merit.

(b) In ground 8 the excerpt was the following quotation from *Gore v. State*, 162 Ga. 267 (134 SE 36): "Where three persons conspire to rob a merchant in his store, and one of the conspirators remains in an automobile in front of the store, with the engine running, in order that the three may speedily escape from the scene of the robbery, while the other two enter the store, and, in furtherance of the common design to rob, kill the merchant intended to be robbed, such killing is the probable consequence of the unlawful design to rob, and all the conspirators are guilty of murder, including the one in the automobile. It is not necessary that the crime of murder should be a part of the original design; but it is enough if it be one of the incidental probable consequences of the execution of their design, and should appear at the moment to one of the participants to be expedient for the common purpose. The intent of the actual slayer is imputable to his co-conspirators."

It was perfectly proper for the solicitor general to read that statement to the court in the presence of the jury as it was a correct statement of the law applicable to the facts in this case. It was not improper and prejudicial for the reasons alleged, which were that the solicitor general tried to draw an analogy between that case and this case, that the jury may have been prejudiced and influenced by hearing the facts and verdict in that case, and that the cases are similar as to fact and law and that the death penalty should have been given the defendant. We think the solicitor general was right—the cases are analogous, having practically the same facts and the same law was applicable. There is no showing that the jury heard the "verdict" in that case, or anything to indicate to the jury that the death penalty was there imposed and should likewise be given here. See *Ayers v. State*, 215 Ga. 325, 328 (4) (110 SE2d 669); *Rome R. Co. v. Barnett*, 94 Ga. 446, 447 (2) (20 SE 355).

6. Ground 9 assigns error on an extract from the charge, which is quoted only in part leaving out other parts of the sen-

tence. An examination of the full charge discloses that the attack upon the charge is without merit. The court charged fully and correctly on conspiracy to commit a crime, and specifically charged that, when individuals associate themselves together to do an unlawful act or acts, any act done in pursuance of that association by any one of the conspirators would, in legal contemplation, be the act of each of them. Then to follow that with a charge that if the defendant did kill the deceased by shooting him with a pistol, which is what is complained of—the jury necessarily understood that the court referred to the act of one of the defendants in shooting and killing the deceased as the act of this defendant. See *Handley v. State,* 115 Ga. 584 (41 SE 992); *Washington v. State,* 218 Ga. 802, 804 (130 SE2d 750); *Ingram v. State,* 204 Ga. 164, 183 (48 SE2d 891).

7. Under the rule that a request to charge "must be correct and even perfect," *Lewis v. State,* 196 Ga. 755 (3) (27 SE2d 659), the court did not err in refusing to charge the written request which states, "The presumption of innocence is legal proof of innocence." See *Key v. State,* 211 Ga. 384 (5), (86 SE2d 212), where this court held that a request to charge to the same effect was not correct.

(a) Grounds 11 and 12 complaining of the court's refusal to charge, are, for the same reasons given above, without merit as neither of them is correct and perfect.

*Judgment affirmed. All the Justices concur, except Quillian, J., who dissents.*